**Jerry Lynn YOUNG,**
**Plaintiff–Appellant,**

v.

**Neil B. BIGGERS, Jr., et al.,**
**Defendants,**

**J.W. Collins, et al.,**
**Defendants–Appellees.**

No. 89–4116.

United States Court of Appeals,
Fifth Circuit.

July 26, 1991.

Jerry Lynn Young, pro se.

James P. Caldwell, Riley, Weir & Caldwell, Tupelo, Miss., for Collins & Hoard.

Henry C. Clay, III, Mike Moore, Atty. Gen., Jackson, Miss., for Funderburk, Grey & Herring.

Edward Lancaster, Houston, Miss., for Fox.

John S. Hill, Mitchell, McNutt, Threadgill, Smith & Sams, Tupelo, Miss., for Crider & Jones.

Jim Waide, Tupelo, Miss., for Farese.

ON PETITION FOR REHEARING

(Opinion November 6, 1990, 5th Cir., 917 F.2d 873)

Before POLITZ, KING and WILLIAMS, Circuit Judges.

KING, Circuit Judge:

We grant rehearing and withdraw our prior opinion, reported at 917 F.2d 873 (5th Cir.1990), and substitute the following:

Jerry Lynn Young (Young) appeals from the district court's grant of summary judgment in favor of the defendants in his 42 U.S.C. § 1983 civil rights suit. Young alleged that a judge, prosecutor, witness, police officers, and others conspired to convict him unjustly of the armed robbery of the Bank of Mississippi in Tupelo, Mississippi. We affirm in part, reverse in part, and remand for further proceedings.

## I. BACKGROUND

Young alleged that eleven defendants conspired to deprive him of property and liberty without due process of law in violation of the fourteenth amendment to the United States Constitution and 42 U.S.C. § 1983. He named as defendants: Judge

Travis Grey, Justice Court Judge in Lee County; Paul S. Funderburk, Assistant District Attorney; Robert Herring, former Sheriff, Lee County; Edward L. Crider, Chief of Police of Tupelo, Mississippi; Doug Jones, detective, Tupelo Police Department; John Fox, defense attorney representing two prosecution witnesses (who were alleged to be Young's accomplices in the robbery and who testified against Young at his trial); John Farese, Young's trial attorney; J.W. Collins, president of the Bank of Mississippi; Barbara Hoard, prosecution witness; and Virginia Duffie, a juror.[1] Young contends that these defendants participated in a grand conspiracy to deprive him of money seized from his person and from his father-in-law's home, and to deprive him of his liberty by framing him for a robbery that he did not commit.

In his complaint, Young alleges that police officers Crider and Jones had a long history of antagonism, hostility, and harassment against him, based in part upon Young's repeated complaints about the police department's failure to protect his convenience stores, and because Young was a successful businessman despite being an ex-convict. In February 1980, Young threatened to sue the police officers for harassment and false arrest. Young alleges that because of this threat, Crider and Jones planned to retaliate by "framing him" for a recent Tupelo, Mississippi, bank robbery. He asserts that Crider and Jones persuaded the actual robber, Troy Harrison, who was one of Young's employees, to accuse him of the crime. This fabricated information, Young contends, served as the basis for the arrest warrant issued by defendant Judge Grey.

At the time of his arrest, the arresting officer confiscated $536 from Young's person. One or two days later, upon being arrested and questioned, Young's wife led officers to her father's home in New Albany where the police confiscated $5,240.

Young asserts that this money was not proceeds from the robbery, but was a portion of an award from his insurance company for damages that he sustained to a house he owned. The police later released Mrs. Young without charges.

In April 1980, Young filed motions in the county and local courts requesting that Chief of Police Crider be directed to return his money or show cause why it should not be returned. The court took no action on the motion. Some time later, Crider turned over the total sum of $5,776 to the President of the Bank of Mississippi, defendant Collins.

In November 1980, Young filed an action in replevin in the Circuit Court of Lee County, Mississippi, seeking return of the money from Crider and Collins. Young alleges that several of the defendants conspired to replace the presiding judge with Judge Biggers because they anticipated that the presiding judge would rule in Young's favor at a scheduled hearing.

In the fall of 1980, Young retained John Farese as his counsel in his impending armed robbery trial. A jury convicted him of that robbery in December 1980, and the Mississippi Supreme Court affirmed that conviction. *See Young v. State,* 420 So.2d 1055 (Miss.1982). Young alleges that defendant Hoard agreed to perjure herself at that trial by testifying that Young was the robber. The defendants, Young contends, also agreed to rig the jury by obtaining a juror who would vote guilty regardless of the evidence.[2] Police detective Jones agreed to perjure himself as well, Young asserts. In furtherance of the conspiracy, defense attorney Farese allegedly sabotaged the defense by failing to prepare for trial, failing to object to certain unconstitutional procedures, failing to cross-examine witnesses properly, failing to put on any substantive defense, and by producing prejudicial evidence.[3]

---

1. The district court apparently dismissed the eleventh named defendant, formerly state judge, and now federal judge, Neil J. Biggers, in a separate order. He is not a party to this appeal.

2. Young alleges that defendant Herring recruited defendant Duffie to serve in that capacity.

3. Farese allegedly showed each juror individually a "mug shot" of Young that showed on its face that he had been arrested for forgery the previous year. According to Young, this false arrest was part and parcel of Criders' and Jones

Subsequent to his criminal trial, Young assigned his rights to the money taken from him and from his father-in-law's house to his attorneys, Roy O. Parker and William M. Maudlin. In February 1981, these attorneys filed a suit in replevin for the money. The Circuit Court found that the $536 that was taken from the person of Young when he was arrested belonged to Young, while the $5240 taken from the home of Young's wife's father belonged to the Bank of Mississippi. Parker and Maudlin recovered the $536 plus interest.

## II. ANALYSIS

*A. Standard of review*

All of the defendants moved the district court to dismiss Young's claims against them because Young failed to state a claim upon which relief could be granted and because the suit was barred by the applicable statute of limitations.[4] Most of the defendants contended that they were entitled to absolute or qualified immunity, and some of the defendants, including Farese, Hoard, and Collins, argued that they were not state actors for purposes of Young's § 1983 suit. Two of the defendants, Collins and Hoard, also moved in the alternative for summary judgment. Because it considered matters outside the pleadings, the district court treated all motions as motions for summary judgment in accordance with Fed.R.Civ.P. 56 and dismissed Young's suit against all of the defendants with prejudice.

■■ Young argues that the district court improperly characterized the motions as motions for summary judgment and urges us to apply the standard of review more favorable to plaintiffs under Rule 12(b)(6). Because Hoard and Collins submitted matters outside the pleadings with their motion to dismiss or in the alternative for summary judgment, the district court properly characterized that motion as a motion for summary judgment. In *Murphy v. Inexco*

*Oil Co.*, 611 F.2d 570, 573 (5th Cir.1980), we stated:

> The only way to test the merit of a claim if matters outside the bounds of the complaint must be considered is by way of motion for summary judgment. In that event, even if a motion to dismiss has been filed, the court must convert it into a summary judgment procedure and afford the plaintiff a reasonable opportunity to present all material made pertinent to a summary judgment motion by Fed. R.Civ.P. 56.

We review the district court's grant of summary judgment for Collins and Hoard, therefore, to determine if a genuine issue exists concerning any material fact, and if not, whether the defendants are entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *City Of Madison, Miss. v. The Bear Creek Water Ass'n, Inc.*, 816 F.2d 1057 (5th Cir.1987).

■■ Young argues, however, that he failed to receive a reasonable opportunity to respond before the district court converted the motions of the other defendants into motions for summary judgment. We agree. The other defendants did not request summary judgment and did not submit matters outside of pleadings with their motions to dismiss. Young, therefore, had no reason to believe that the district court would grant summary judgment on their claims, and had no opportunity to present summary judgment evidence in response to the judge's *sua sponte* recharacterization of their motions. We consider the dismissal of those defendants, therefore, to determine if it appears to a certainty that Young cannot recover under any state of facts that could be proved in support of his claim. *Hospital Bldg. Co. v. Trustees of Rex Hosp.*, 425 U.S. 738, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976); *Fontana v. Barham*, 707 F.2d 221, 227 (5th Cir.1983), *cert. denied*, 464 U.S. 1043, 104 S.Ct. 711, 79 L.Ed.2d 175 (1984).

campaign of harassment. He was never formally charged or prosecuted for the alleged forgery.

**4.** The district court initially dismissed the suit on statute of limitation grounds, and we initially affirmed. *See Young v. Biggers*, 816 F.2d 216

(5th Cir.1987). We reversed on rehearing, however, based on the Supreme Court's decision in *Saint Francis College v. Al-Khazraji*, 481 U.S. 604, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987).

## B. Immunity defenses

■ Young's claims against Grey, Funderburk, Hoard, Herring, and Duffie must fail as a matter of law because of their respective immunities from § 1983 suits for damages. We need not pause over the dismissal of defendants Grey and Herring because Young stated that he would "not object to or appeal the dismissal" of defendants Grey and Herring from the lawsuit on immunity grounds.[5]

■ Funderburk, the prosecuting assistant district attorney, likewise is absolutely immune from liability for his actions in initiating prosecution and carrying Young's criminal case through the judicial process. *Id.* at 996 (citing *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)). Young, however, asserts that Funderburk acted outside the scope of his prosecutorial duties when he interfered with the replevin action by replacing the presiding judge with Judge Biggers. These allegations, however, are wholly unsupported and conclusory and will not support Young's civil rights claim. *Lynch v. Cannatella,* 810 F.2d 1363, 1369–70 (5th Cir. 1987) (civil rights plaintiff must plead operative facts; bald allegations of a conspiracy are insufficient).

■ Hoard also is absolutely immune from suit as a witness. *Briscoe v. LaHue,* 460 U.S. 325, 329–34, 103 S.Ct. 1108, 1112–15, 75 L.Ed.2d 96 (1983). Young's allegations that she took actions in addition to her witness activities are without support and are conclusory. In addition, Duffie, whose sole alleged involvement in the conspiracy was her service as a juror at Young's criminal trial, is absolutely immune. *White v. Hegerhorst,* 418 F.2d 894, 895 (9th Cir.1969), *cert. denied,* 398 U.S. 912, 90 S.Ct. 1710, 26 L.Ed.2d 74 (1970).

## C. Sufficiency of the pleadings

■ The district court also properly dismissed Young's claims against Collins, Fox, and Farese because Young makes only conclusory allegations against these defendants. Young asserts, in essence, merely that these defendants conspired to rig the jury and to deprive him of a fair trial.[6] As we stated in *Cannatella:*

> Plaintiffs who assert conspiracy claims under civil rights statutes must plead the operative facts upon which their claim is based. Bald allegations that a conspiracy existed are insufficient.

810 F.2d at 1369–70. Young's conspiracy allegations lack such specific operative facts.[7]

■ Young, however, makes more specific allegations against Chief of Police Crider and Police Detective Jones. He contends that they harbored animosity against him, harassed him, and finally persuaded his two alleged accomplices in the armed robbery to implicate him. He also alleges that Crider persuaded Hoard, the Chief prosecution witness, falsely to identify him as the perpetrator of the crime.

5. Herring is entitled to a qualified immunity as Sheriff. Young admits that he does not have enough evidence to prove Herring's participation in the conspiracy, and that Herring's defense of qualified immunity, therefore, should succeed. Judge Grey is absolutely immune from liability for his judicial actions. *See Johnson v. Kegans,* 870 F.2d 992, 995 (5th Cir.) (holding that judges are absolutely immune for judicial acts unless performed in clear absence of jurisdiction), *cert. denied,* 492 U.S. 921, 109 S.Ct. 3250, 106 L.Ed.2d 596 (1989). The alleged magnitude of the error or mendacity of the acts is irrelevant. *Id.*

6. Ordinarily, these individuals (two attorneys and a banker) could not be considered state actors for purposes of Young's § 1983 action. Young alleges a § 1983 action against them only by asserting that they were a part of a conspiracy that contained individuals, such as the defendant police officers, who acted under color of state law. Young makes some fairly specific allegations, especially against his attorney, Farese, but Young connects these defendants to the conspiracy only by the conclusory allegations in his complaint.

7. We observe that the district court also concluded that all claims arising from Young's ownership of the money are barred by collateral estoppel. Young's attorneys' state replevin action, according to the district court, settled the ownership issue. In addition, the district court found that Young lacked standing to complain of the money taken from his person because Young assigned all interest in that money to his attorneys. The district court also reasoned that Young failed diligently to pursue his post-deprivation replevin remedy.

We doubt whether Young's allegations against these officers, without more, could withstand a properly supported motion for summary judgment. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986) (movant entitled to summary judgment, even without evidence in opposition, if nonmoving party fails to establish the existence of element essential to claim); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (summary judgment appropriate if reasonable jury could not return verdict for nonmoving party). His allegations, however, are not merely conclusory. He alleges specific, operative facts in support of his claims against these officers.[8] Although the district court rested its dismissal of Young's claims against these officers, in part, on their defense of qualified immunity, that defense will not shield them if Young can prove the allegations in his complaint.

Public officers "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Lynch v. Cannatella,* 810 F.2d at 1372 (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 812, 102 S.Ct. 2727, 2735, 73 L.Ed.2d 396 (1982)). A reasonable person, however, surely would realize that "framing" someone for a crime that he did not commit deprives that person of his constitutional rights.[9] We cannot conclude to a certainty, therefore, that Young cannot recover under any state of facts that could be proved in support of his claim against these officers.

## III. CONCLUSION

For the foregoing reasons, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

AFFIRMED IN PART; REVERSED IN PART AND REMANDED.

---

**8.** We note that because the officers were state actors, Young's allegations against the officers do not depend on his ability to connect them to a larger conspiracy.

**9.** Furthermore, Young correctly observes that the officers are not entitled to qualified immunity if he can prove that they knowingly presented false information in the affidavit for his arrest warrant. *See Malley v. Briggs,* 475 U.S. 335, 344–45 n. 7, 106 S.Ct. 1092, 1097–98 n. 7, 89 L.Ed.2d 271 (1986).